## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMES E. ROLLINS, SR.,**

**Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

**Respondent.**                **Civil No. 11-cv-381-DRH**
                               **Criminal No. 05-cr-30133-DRH-4**


### MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I.    Introduction

Now before this Court is petitioner James E. Rollins, Sr.'s, motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government opposes petitioner's motion (Doc. 12). For the following reasons, petitioner's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.[1]

### II.    Procedural History

On September 8, 2005, a federal grand jury returned a two-count indictment against petitioner (05-cr-30133, Doc. 1). On February 13, 2007, a jury found petitioner guilty of both offenses: one count of conspiracy to knowingly and

---

[1]Having closely examined the record before it, the Court concludes that petitioner's claims do not warrant an evidentiary hearing. *See Galbraith v. United States,* 313 F.3d 1001, 1009 (7th Cir. 2002) ("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (holding a hearing not required where record conclusively demonstrates that a defendant is entitled to no relief on § 2255 motion); *see also* Rules 4(b) and 8(a) of RULES GOVERNING SECTION 2255 PROCEEDINGS.

intentionally manufacture, distribute, and possess with intent to distribute cocaine and cocaine base; and one count of distribution of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B) (05-cr-30133, Docs. 409, 410, 412, and 413). Thus, on July 5, 2007, the Court sentenced petitioner to 97 months on each count, to run concurrently, plus four years of supervised release. Further, petitioner was ordered to pay a total assessment of $200.00 and a fine of $1,000.00 (05-cr-30133, Doc. 551).

On direct appeal, petitioner argued that the Court: (1) abused its discretion in allowing the case agent (DEA Agent McGarry) to testify as to his impressions of electronically intercepted telephone conversations; (2) erred in denying his motion for a judgment of acquittal based on insufficient evidence; and (3) erred in increasing his offense level for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). The Seventh Circuit affirmed petitioner's conviction on September 15, 2008, *United States v. Rollins,* 544 F.3d 820 (7th Cir. 2008), and the Supreme Court denied petitioner's application for a writ of certiorari on May 24, 2010, *Rollins v. United States,* 130 S. Ct. 3343 (2010).

Instantly, petitioner raises nine grounds which he alleges warrant the relief he seeks. Specifically, he argues that: (1) trial counsel denied him his right to testify in his own defense; (2) the prosecution improperly failed to provide petitioner with grand jury transcripts needed for impeachment of an adverse witness (Agent McGarry); (3) Agent McGarry presented false testimony to the grand jury; (4) trial counsel denied petitioner his right to present a defense when

he failed to subject the government's case to meaningful adversarial testing or present a case in chief; (5) the case against petitioner was not properly brought because no indictment was presented in open court; (6) trial counsel was ineffective for failing to move to suppress the gun found in petitioner's residence or objecting to its introduction as evidence; (7) the second $100.00 assessment imposed on petitioner ($200.00 total for two counts) violated the Double Jeopardy Clause; (8) the increased sentence due to possession of a firearm was based on false and unreliable information; and (9) trial counsel was ineffective for failing to argue at sentencing that petitioner did not possess or use the gun during the time of the conspiracy. The Court shall address petitioner's claims in turn. However, as petitioner's contentions raise arguments that are procedurally defaulted, lacking in merit, or raised and rejected on direct appeal, petitioner's motion is **DENIED**.

### III.   <u>Statement of Facts</u>

Beginning in August of 2004, law enforcement agencies in southern Illinois began an investigation of a crack and powder cocaine trafficking conspiracy in Alton, Illinois. Agents eventually focused their attentions on Richard Pittman, a powder and crack cocaine distributor who later testified for the government at trial.  Pittman's trial testimony related that he attended a family reunion in Alton during the summer of 2002. Petitioner's son, James Rollins, Jr., was also in attendance. Shortly thereafter, Rollins, Jr., and Pittman began distributing cocaine together. Rollins, Jr., would deliver one-half and one-quarter kilogram

packages once a month to Pittman via John Frost, an employee of Rollins, Jr.'s, trucking company.

In the summer of 2003, petitioner began making the cocaine deliveries to Pittman in the Alton area. Pittman testified that on March 20, 2005, he went to petitioner's home in St. Louis, Missouri, to purchase one-fourth kilogram of powder cocaine for $5,400.00. The two men had phone conversations which law enforcement intercepted. Pittman identified his and petitioner's voices on the calls. While at petitioner's home, Pittman saw 18 ounces of powder cocaine and a set of digital scales. Pittman's common law wife, Tamiesha Williams, also agreed to testify for the government. At trial, she stated that petitioner delivered powder cocaine to Pittman at her house every two weeks or once a month from the end of 2003-2005.

Agent McGarry led the investigation. He listened to and intercepted phone calls every day from ten different numbers, including petitioner's, from February to July of 2005. Thus, based on the familiarity such monitoring developed, he testified as to his impressions of various intercepted phone calls involving petitioner and his co-defendants. Specifically, of the over 100 recorded telephone conversations played at trial, Agent McGarry testified that over 43 were alleged drug-related calls between Pittman and petitioner, and 30 were drug-related calls between petitioner and Rollins, Jr.

Agent McGarry further testified that on September 20, 2005, law enforcement executed a search warrant at petitioner's home and petitioner was

arrested. During the course of the search, law enforcement found various drug paraphernalia, including cutting agents, a mixing kit, and sifter. They additionally found a firearm with ammunition, a digital scale, latex gloves, plastic baggies, and plastic mixing bowls.

## IV.   Petitioner's Section 2255 Petition is Denied

### a.  Law

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under Section 2255 is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)), as a collateral attack pursuant to Section 2255 is not a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).

Thus, unless a movant demonstrates changed circumstances in fact or law, he may not raise issues already decided on direct appeal, *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995), as "the 'law of the case' doctrine

dictates that 'once [the appellate] court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it.'" *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) (quoting *United States v. Mazak,* 789 F.2d 580, 581 (7th Cir. 1986)).

Further, a petitioner cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal, or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Bousley v. United States,* 523 U.S. 614, 622 (1998); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000). Moreover, a Section 2255 motion cannot pursue nonconstitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States,* 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the Section 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

Petitioner's various grounds for relief include numerous allegations of ineffective assistance of counsel.  Importantly, the Supreme Court has held that the usual procedural default rule does not generally apply to such claims as, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding

under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the second prong, petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Id.* at 696. A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). Thus, petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006).

### b. Application

### i. Ineffective Assistance of Counsel: Denial of Right to Testify in Own Defense

Petitioner first alleges ineffective assistance of counsel, as his trial counsel disregarded petitioner's expressed desire to testify. Petitioner's allegations amount to this: petitioner expressed to his counsel that he desired to testify; however, his

counsel chose not to call him to the stand. Admittedly, petitioner repeatedly states his counsel never advised him he could not testify. He additionally relates that he questioned counsel at the close of his case as to why he was not called to the stand. Petitioner alleges his counsel initially gave him no explanation, but eventually sent him a letter in which counsel states he made the decision not to call petitioner to the stand (Doc. 1, p. 7, Doc. 2, pp. 2-6, Doc. 17, p 4). Surprisingly, the alleged letter is not included among petitioner's supportive materials.

In support of his allegations, petitioner offers his own statement. In addition, he offers the alleged statements of Aunna Ward, petitioner's niece (Doc. 2, p. 27), and Vicky Smith, petitioner's sister (Doc. 2, pp. 29-30). Ward's unsigned statement alleges she heard petitioner state he wished to testify to trial counsel. Smith's signed yet not notarized statement makes nearly identical assertions, as she states she heard petitioner "clearly express[] his intent to testify."

In response, the government argues the aforementioned declarations of Ward and Smith do not carry evidentiary weight due to their lack of specificity and credibility. As to their substance, the government notes that Ward and Smith merely state petitioner expressed his desire to testify at some point. They do not have knowledge as to whether petitioner waived his right at a later time, nor do they suggest that defense counsel denied petitioner his right to testify. As to the credibility of the declarations, the government notes that Ward's statement lacks a

signature and further notes that the declarations appear to have been typed on the same type-writer as petitioner's petition and supportive materials.

As an aspect of the right to defend oneself, a criminal defendant has a constitutional right to testify in his own behalf, a right that *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987), held to be implicit in the Fifth, Sixth, and Fourteenth Amendments. *See Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991). As this right is personal to the defendant, his counsel cannot waive it. *Id*. However, "[w]hether silence alone should be presumed to be a waiver is a more difficult question." *Thompson v. Battaglia*, 458 F.3d 614, 619 (7th Cir. 2006). As the Seventh Circuit explained in *Underwood*, "it is simple enough after being convicted for the defendant to say, 'My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial.'" *Underwood*, 939 F.2d at 475-76. Thus, in this circuit,

> [A] barebones assertion by a defendant, albeit under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary- and we also think some substantiation is necessary, such an affidavit from the lawyer who allegedly forbade his client to testify- to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Id*. at 476.

Petitioner offers his own statement in addition to the alleged statements of two family members in corroboration of his generalized assertions. Of course petitioner's self-serving statement is not enough to create a material dispute, and the credibility of the purported statements of his family members is at best questionable.  The inherent conflict created by statements of family aside, they are

seemingly authored by petitioner. Moreover, Ward's statement is unsigned and not notarized. Thus, it is given little, if any, evidentiary value. Notwithstanding these credibility issues, the statements of Ward and Smith do not provide the particularity necessary pursuant to *Underwood*. They merely state petitioner expressed a desire to testify, off the record, to counsel. They do not state petitioner's trial counsel discouraged petitioner from testifying. Moreover, Smith's statement alleges petitioner's trial counsel "expressed confidence" in petitioner's ability to testify. Additionally, as *Underwood* requires more than a bare assertion of the denial of the right to testify, petitioner must offer the Court specifics as to his proposed testimony. Petitioner merely alleges he would have generically explained his version of the facts to the jury (Doc. 1, p. 8). This is not enough.

Moreover, even assuming these statements provided the requisite particularity necessary to go forward with such a claim, it appears the Seventh Circuit subjects the right to testify to harmless error analysis. Meaning, petitioner's alleged denial can only be deemed prejudicial if it is shown that the failure to testify affected the outcome of the trial. *See Ortega v. O'Leary*, 843 F.2d 258, 262 (7th Cir. 1988) (applying *Chapman* standard to denial of right to testify); *Barrow v. Uchtman*, 398 F.3d 597, 608 n. 12 (7th Cir. 2005) (stating that Seventh Circuit precedent "seems to support the . . . view" that a defendant seeking to have his conviction overturned based on a deprivation of the right to testify must show that his "failure to testify affected the outcome of the trial") (citing *Rodriguez v. United States*, 286 F.3d 972, 983-84 (7th Cir. 2002));

compare *Underwood*, 939 F.2d at 475 (questioning whether *Ortega* applies the right standard).

In light of the "overwhelming evidence" of petitioner's guilt presented at trial, *Rollins*, 544 F.3d at 833, including several witnesses and hours of incriminating wiretapped phone calls, petitioner has not demonstrated that merely relating his version of the facts would have affected the outcome of the verdict. *Ortega*, 843 F.2d at 262. Further, the result would be the same under the prejudice standard of *Strickland*, as petitioner cannot demonstrate to a, "reasonable probability" that without the unprofessional errors (in this case, his counsel's alleged refusal to allow petitioner to testify), "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see United States v. Williams*, 934 F.2d 847, 852 (7th Cir. 1991) (petitioner's speculation that had the jury heard a non-criminal explanation of his conduct the result would have been different, amounted to "conclusory allegations" insufficient to demonstrate "prejudice" under *Strickland*). Thus, petitioner's first claim is denied without an evidentiary hearing.

### ii.  Withholding *Brady* Material

Petitioner's next contention, couched as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), alleges that transcripts of the grand jury proceedings were not available to defendant prior to his counsel's cross-examination of Agent McGarry. First, the Court notes that petitioner did not raise this issue on direct appeal and as he does not demonstrate the requisite cause and actual prejudice

or show that he is "actually innocent," it is procedurally defaulted. *Bousley,* 523 U.S. at 622. Thus, the Court is barred from reviewing its merits.

Regardless, petitioner's claim is meritless. To demonstrate a *Brady* violation, petitioner must show "(1) that the 'evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) that the evidence was 'suppressed by the State, either willfully or inadvertently'; and (3) that 'prejudice . . . ensued.'" *United States v. Price,* 418 F.3d 771, 785 (7th Cir. 2005) (quoting *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999)). Instantly, petitioner argues, "grand jury transcripts would [have] allow[ed] impeachment of McGarry in a manner[] unlike and unrelated to trial cross examination. The transcripts are not merely accumulative and are therefore material." Further, he argues, "[h]ad the perjurious nature of his testimony been available for impeachment, and the jury not believed McGarry or questioned[ed] his credibility, his credibility could have suffered a serious blow. The jury [m]ight have reached a different conclusion" (Doc. 2, p. 9).

Despite petitioner's assertions, a plain reading of the trial transcript reveals that petitioner's trial counsel did in fact cross examine Agent McGarry using his grand jury testimony (Trial Tr. Vol. 11, pp. 160-62), as with the Court's leave (Trial Tr. Vol. 2, p. 11), copies of Agent McGarry's grand jury transcript were made available to petitioner and all of his co-defendants (Trial Tr. Vol. 11, pp. 7-9). Further, petitioner admitted in his motion for new trial that his counsel possessed the grand jury transcripts during trial (05-cr-30133, Doc. 684, p. 9). It

appears petitioner bases his meritless claim on his trial counsel's alleged refusal to allow petitioner to personally inspect the grand jury transcripts. Thus, as petitioner's trial counsel had access to the transcripts, petitioner cannot demonstrate the requisite suppression or prejudice necessary to sustain his instant complaint. Accordingly, it is without merit and must fail.

### iii.   False and Prejudicial Grand Jury Testimony

Next, petitioner contends Agent McGarry presented false testimony to the grand jury. Petitioner states McGarry had no firsthand knowledge of the events on which he testified and that his testimony could not be verified through any source. Petitioner states the government had knowledge of this false testimony and presented it in bad faith (Doc. 1, p. 12, Doc. 2, pp. 10-14, Doc. 17, pp. 5-6). Thus, petitioner argues that the government's knowing use of false testimony violated his due process rights.

Although petitioner did challenge the Court's allowance of Agent McGarry's "impressions" testimony on direct appeal, petitioner failed to raise this distinct issue. As he does not demonstrate the requisite cause and actual prejudice or show that he is "actually innocent," this claim is procedurally defaulted. *Bousley,* 523 U.S. at 623.

Regardless, petitioner's claim is meritless. It is well settled that, "[t]he government's knowing use of false testimony, or failure to correct testimony, violates due process." *United States v. Burke,* 425 F.3d 400, 412 (7th Cir. 2005)(citations omitted). However, petitioner must establish that: (1) the

prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Id.* (citing *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001)).

Petitioner does not offer proof that any of Agent McGarry's statements to the grand jury were false. Petitioner vaguely cites various alleged statements of Agent Mcarry, many of which were immaterial to the government's case against petitioner, and conclusively states they were all false (Doc. 2, pp. 12-13). Petitioner alleges Agent McGarry lied to cover his numerous investigatory mistakes which resulted in the "not solid" evidence of petitioner's guilt and to further an alleged "racial bias."

Additionally, petitioner states Agent McGarry testified at trial that his grand jury testimony was incorrect. Petitioner is presumably referencing his trial counsel's cross-examination of Agent McGarry. On cross-examination, Agent McGarry explained that when he testified before the grand jury, the investigation had led him to believe that a certain residence at the center of the investigation belonged to Shirley Mae Pittman. However, at trial, Agent McGarry testified that he later learned this information was incorrect (Trial Tr. Vol. 11, pp. 160-62). This certainly does not amount to an admission of perjury. *See United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.") (citation omitted).

Further, even if petitioner did have evidence of false testimony, he would still have to prove the government knew or should have known of such falsity, which he has not. Finally, as petitioner vaguely cites alleged statements of Agent McGarry that either relate tangentially to the government's case or represent factual disputes resolved in the government's favor, he has not demonstrated there is a reasonable likelihood that the purportedly false testimony could have affected the judgment of the jury. *Burke*, 425 F.3d at 412.   Thus, petitioner's unsubstantiated allegation that the government was aware of Agent McGarry's allegedly false statements and presented them in bad faith is unfounded and must fail.

### iv. Ineffective Assistance of Counsel: Failure to Subject the Prosecutor's Case to Meaningful Adversarial Testing

Petitioner's fourth claim cites his trial counsel's overall representation as amounting to ineffective assistance of counsel. Petitioner alleges,

> Counsel failed to make an opening or closing argument, to present a case-in-chief[] and to subject the prosecutor's case to a meaningful adversarial testing. Waiving opening was not a defense strategy but, based on record, was waived to save time. Counsel made no challenge to prosecutor's opening or closing or attempted to rebut prosecution's theory. Counsel made no attempt during trial to persuade the jury of my innocence and took no opportunity to present a defense theory to the jury.

(Doc. 1, p. 14). Petitioner's memorandum in support additionally states his trial counsel failed to investigate potential witnesses and evidence that would have disproved the government's theory of the case and did not object to certain hearsay testimony of Agent McGarry (Doc. 2, pp. 22-23).

The Court can swiftly dispose of petitioner's baseless claims as he has clearly failed to overcome the "strong presumption that the defendant's attorney rendered adequate representation of his client." *Meyer*, 234 F.3d at 325. Petitioner generically argues that various tactical decisions of his counsel amount to constitutionally deficient representation. However, "[t]rial tactics are a matter of professional judgment, and . . . [courts] will not play 'Monday morning quarterback' when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how best to handle a case." *United States v. Malone*, 484 F.3d 916, 920 (7th Cir. 2007) (citation omitted). Further, a petitioner alleging ineffective assistance of counsel for failure to investigate has the "burden of providing the court . . . 'a comprehensive showing as to what the investigation would have produced.'" *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (quoting *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990)).

Petitioner's trial counsel vigorously represented petitioner through the filing of pre-trial motions, including motions to suppress, adeptly cross-examining witnesses, most notably Agent McGarry, and presenting the testimony of Tiffany Williams, petitioner's daughter, in his defense. As to counsel's decision not to present an opening statement, he explained, "at this point (day twelve of trial) the less the jury hears from lawyers and the more they hear from witnesses we're probably better off" (Trial Tr. Vol. 12, p. 26). As the Court stated immediately thereafter and reiterates instantly, it "couldn't agree with that sentiment more."

Further, petitioner has not provided the Court with specifics as to what the investigation of certain unnamed witnesses would have produced.

Finally, petitioner argues his counsel was ineffective for failing to object to alleged hearsay testimony of Agent McGarry based on line sheets and synopses he allegedly did not prepare. While these allegations are frankly too vague to meaningfully review, it appears petitioner is generally referring to Agent McGarry's testimony in which he gave certain impressions on the basis of various line sheets and synopses of the intercepted phone calls introduced (*See* Trial Tr. Vol. 10). While petitioner does not point to specific statements, the Court's review of Agent McGarry's testimony related to line sheets and synopses does not reveal any glaring evidentiary missteps by petitioner's counsel. Regardless, given the abundance of evidence of petitioner's guilt, he has not demonstrated to a "reasonable probability" that had his counsel objected to certain supposed hearsay, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 696. Accordingly, as petitioner has not satisfied either prong of *Strickland,* his claim must fail.

### v.  Failure to Present Indictment in Open Court

Petitioner next contends a criminal proceeding was not properly brought against him as the indictment was not returned in open court (Doc. 1, p. 17). First, the Court must again note that petitioner failed to raise this issue on direct appeal. Thus, it is procedurally defaulted, as petitioner has not demonstrated cause and actual prejudice. *Bousley,* 523 U.S. at 623.

Alternatively, it is meritless. FEDERAL RULE OF CRIMINAL PROCEDURE 6(f) governs the finding and return of an indictment, stating that, "[t]he grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court." The instant indictment is valid on its face. It is signed by the foreperson, the assistant United States Attorney, and was presented in open court (05-cr-30133, Doc. 1, Doc. 14). To the extent petitioner argues the indictment is invalid because it was not read in open court and thus he was unaware of the charges against him, the minute entry of petitioner's initial appearance and arraignment demonstrates that he waived any such reading. However, it further indicates petitioner was advised of the charges against him at that time (05-cr-30133, Doc. 14-1). Accordingly, petitioner's claim is without merit and must fail.

### vi. Ineffective Assistance of Counsel: Failure to Move for Suppression of Handgun

Petitioner next raises ineffective assistance of counsel for his trial counsel's failure to move for suppression of the Smith & Wesson firearm found during the execution of a search warrant on September 20, 2005, at petitioner's residence (Doc. 1, pp. 19-20). To reiterate, this firearm was found during the execution of a valid search warrant. Thus, petitioner's trial counsel most obviously was not ineffective for refusing to fulfill petitioner's instant request, as "[w]hen the claim of ineffective assistance of counsel is based on counsel's failure to present a motion to suppress, [the Seventh Circuit requires] that a defendant prove the motion was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). Thus, his grievance is clearly unfounded and must fail.

### vii.  Sentence Violated Double Jeopardy Clause

Petitioner states, "I was sentenced for conviction on counts 1 and 5 to be served concurrent[ly]. The $100[.00] assessment on each count made me liable to pay a total assessment of $200.00[.] The additional $100.[00] is [an] adverse collateral consequence[] [of] the second conviction" (Doc. 1, p. 22). Thus, petitioner argues, "the $200.00 assessment imposed by the court violate[d] the Double Jeopardy Clause" (Doc. 2, p. 19).

Again, notwithstanding the fact petitioner's claim is procedurally defaulted, *Bousley,* 523 U.S. at 623, it is also meritless. The Double Jeopardy Clause of the Fifth Amendment provides three forms of protection to defendants: first, the clause prevents a subsequent prosecution for the same offense after an acquittal; second, it prevents subsequent prosecutions for the same offense after a conviction; and third, it prevents multiple punishments for the same offense. *United States v. Wilson,* 420 U.S. 332, 342-43 (1975) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)).

Petitioner relies on *Ray v. United States*, 481 U.S. 736 (1987), and *Rutledge v. United States*, 517 U.S. 292 (1996). Neither case warrants petitioner's requested relief. *Ray* held the "concurrent sentence doctrine," allowing an appellate court to avoid a challenge to a conviction if the sentence runs concurrent to an equal or longer sentence on an unchallenged or affirmed conviction and there is no adverse collateral consequences to the defendant, *see Hill v. Werlinger,* 695 F.3d 644, 649 n. 1 (7th Cir. 2012), could not apply where a

special assessment was applied to each count of conviction. *Ray,* 481 U.S. at 737. *Ray* is not applicable to petitioner's instant claim.

Further, in *Rutledge,* the Supreme Court held that because continuing criminal enterprise under 21 U.S.C. § 848 was a lesser-included charge of participating in a conspiracy to distribute a controlled substance under 21 U.S.C. § 846, it could not sentence the defendant to multiple special assessment fees for each charge. *Rutledge,* 517 U.S. at 300.

Petitioner was convicted of conspiracy to manufacture, distribute, and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, as well as knowingly and intentionally distributing a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). These constitute separate and distinct offenses. *See United States v. Felix,* 503 U.S. 378, 389-90 (1992) (explaining the well-established rule that a substantive crime and a conspiracy to commit that crime are not the "same offence" for double jeopardy purposes). 18 U.S.C. § 3013 provides that, "[t]he court shall assess on any person convicted of an offense against the United States." Thus, petitioner's two separate assessments arising from two separate offenses do not violate the Double Jeopardy Clause. Accordingly, petitioner's claim is without merit and must fail.

### viii.   Sentence Based on False Information

Petitioner contests the Court's application of a two-level sentencing enhancement for his possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1).

Petitioner contends the Court applied the enhancement based on false information, as evidence exists that petitioner did not possess the gun during the offense (Doc. 1, p. 24). In reviewing petitioner's instant grievance on direct appeal, the Seventh Circuit held the government met its burden of proving by a preponderance of the evidence that the firearm was possessed during the offense or relevant conduct. *Rollins*, 544 F.3d at 837 (citing *United States v. Womack*, 496 F.3d 791, 797 (7th Cir. 2007)). Thus, the appellate court found the Court did not err in its application of an enhancement under U.S.S.G. § 2D1.1(b)(1). As petitioner has not presented a change in facts or law warranting reexamination of the Seventh Circuit's holding, it constitutes the "law of the case" and as such is binding on this Court. *Fuller*, 398 F.3d at 648. Thus, petitioner's claim must fail.

### ix. Ineffective Assistance of Counsel: Failure to Argue at Sentencing That Petitioner did not Possess the gun During the Time of the Conspiracy

Finally, petitioner raises yet another meritless argument related to his enhancement under U.S.S.G. § 2D1.1(b)(1). Petitioner argues his counsel was ineffective for failing to argue the gun was not possessed during the commission of the offense. However, as related above, on direct appeal, petitioner's counsel made this exact argument. And once again, the Seventh Circuit upheld the Court's application of an enhancement, noting petitioner, "points to no evidence to suggest that the conspiracy had ended before his arrest and the discovery of the gun." *Rollins*, 544 F.3d at 837. This observation still holds true.

Further, his counsel objected to the recommendation of an enhancement prior to petitioner's sentencing (05-cr-30133, Doc. 542) (filed under seal). At sentencing, due to petitioner's admissions to law enforcement concerning the gun's whereabouts, petitioner's counsel made the tactical decision to argue the gun was not connected to petitioner's offenses, rather than to contest possession outright (S. Tr., pp. 18-20). As this decision was clearly reasonable, petitioner has not met his burden under *Strickland*.  Thus, petitioner's claim is without merit. Accordingly, petitioner's motion is **DENIED** in its entirety.

### x. Certificate of Appealability Denied

Under Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether petitioner's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted.  *See Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009).  A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

For the reasons stated above, petitioner solely raises issues that are procedurally defaulted, completely lacking in merit, or raised and rejected on direct appeal.  Thus, reasonable jurists would not debate that the petition does not present a substantial showing of the denial of a constitutional right, nor would they encourage the claims to proceed further. Therefore, the Court **DENIES** petitioner a certificate of appealability.

## V.   Conclusion

For the reasons set forth above, petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence is **DENIED** (Doc. 1).  Thus, petitioner's claims are **DISMISSED WITH PREJUDICE**.  Further, the Court shall not issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 29th day of November, 2012.

Digitally signed by
David R. Herndon
Date: 2012.11.29
11:51:45 -06'00'

**Chief Judge**
**United States District Court**